[Cite as *State v. Ferguson*, 2022-Ohio-1648.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

    Plaintiff-Appellee,                      :

                                          No. 20AP-437

v.                                               :          (C.P.C. No. 19CR-1636)

Jared T. Ferguson,                               :          (REGULAR CALENDAR)

    Defendant-Appellant.                     :

---

D E C I S I O N

Rendered on May 17, 2022

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued:** *Darren M. Burgess.*

**On brief:** *James A. Anzelmo*, for appellant. **Argued:** *James A. Anzelmo.*

---

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Jared T. Ferguson, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of murder, an unclassified felony; felony murder, an unclassified felony; and tampering with evidence, a third-degree felony; and a trial court verdict finding him guilty of domestic violence, a third-degree felony, for which he was sentenced to an aggregate prison term of 18 years to life. For the reasons that follow, we reverse the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} Appellant was indicted on April 3, 2019 on four counts: two counts of murder, in violation of R.C. 2903.02, each an unclassified felony; one count of tampering with evidence, in violation of R.C. 2921.12, a third-degree felony; and one count of domestic violence, in violation of R.C. 2919.25, a third-degree felony. The indictment alleged the foregoing offenses occurred on or about March 24, 2019.

{¶ 3} On August 3, 2020, a jury trial commenced, with the murder counts and the tampering with evidence count being tried to the jury, while the domestic violence count was tried to the court after appellant waived trial by jury as to this count. The record shows that Ferguson was present for all portions of the trial with two minor exceptions: one, he was not present during some purely housekeeping communications between the trial court and the jury at the conclusion of voir dire; and two, during jury deliberations, Ferguson was not present during the conference between the trial court and counsel regarding the jury's questions because, unfortunately, Ferguson had to be placed in a COVID quarantine status at the jail and could not be transported to the courthouse that day. Nevertheless, the record is clear that the response given by the trial court to the jury's questions–"you have received all the testimony and evidence. You must rely on your collective memory to decide all factual issues"–was inconsequential. (Tr. Vol. II. at 761-63.)

{¶ 4} The following evidence was adduced at trial. Josiah Murphy testified that he was a friend of Ferguson, Lisa Baker, and Deystefano English. According to Murphy, Baker and Ferguson were a couple. English lived in the same apartment building as Baker and Ferguson–33 East Duncan Street–where English shared an apartment with his mother-like figure, Tameka Wade. (Tr. Vol. I at 267-68, 287-88.) Occasionally, Wade would kick him out of the apartment, and at these times English would temporarily live with Baker and

Ferguson in the upstairs apartment which they shared. English would also get kicked out of Baker and Ferguson's apartment, and as of March 24, 2019, English had been kicked out of Baker and Ferguson's apartment.

{¶ 5} Murphy testified that Baker and Ferguson had lived together for a few years after Baker had gotten Ferguson "off the street" when he was homeless. (Tr. at 271.) Baker and Ferguson shared a cell phone that Murphy would text message to communicate with them.

{¶ 6} Murphy would occasionally smoke marijuana with English, Baker and Ferguson. Murphy also sold marijuana and would loan money to people "like a loan shark." (Tr. at 270-71.) One of the people to whom Murphy would loan money was Ferguson.

{¶ 7} Murphy gave testimony regarding a screen shot of a text message conversation between Murphy and the shared cell phone used by Baker and Ferguson which took place on March 24, 2019. (State's Ex. C2) Murphy testified that Ferguson texted him on Murphy's cell phone to tell him that he had the $15 he owed to Murphy. In the text, Ferguson told Murphy to "come get it." (Tr. at 278.)

{¶ 8} Murphy and English went to 33 East Duncan Street and encountered Ferguson at a nearby restaurant. Ferguson told Murphy, "I got your money. You've got to go inside." (Tr. at 281.) Ferguson began laughing and told Murphy "[t]here's a dead body in there." *Id.* Later in his testimony, Murphy added that Ferguson told him "I bodied that bitch." *Id.* at 303. Murphy testified neither he nor English believed him, based on the joking manner he was using. Ferguson gave Murphy a key to get into the residence and Murphy and English entered the 33 East Duncan Street building.

{¶ 9} Murphy testified that he went into Baker and Ferguson's apartment and found every room had been cleaned except one. He later added that he had never seen the place look so clean. Ferguson came into the apartment about a minute later and he led Murphy to one of the bedrooms which was locked. Ferguson kicked the door open, and that damage is reflected in Exhibit D40.

{¶ 10} Murphy saw a pile of blankets on the bed. When Ferguson moved one of the blankets, Murphy saw one of Baker's hands. Murphy immediately began exiting the residence, and as he was leaving, Ferguson said to him "[d]on't snitch on Crip." (Tr. at 286.) Murphy testified that Ferguson sent a text to him shortly thereafter stating "im out" and that Murphy took that to mean that Ferguson had left the scene.

{¶ 11} After exiting Baker's residence, Murphy went downstairs to Wade's apartment where English had remained. Murphy told them what happened, and Wade called 911. About 20 minutes later, Ferguson also called 911 to report that Baker had been killed. Murphy explained he believed Baker had been killed based on Ferguson telling him that he had "bodied that bitch." (Tr. at 303.)

{¶ 12} Murphy further testified that Ferguson returned to the apartment building later in the day when the police were still there. The police saw him and yelled his name, but Ferguson turned around. They chased him and they arrested him.

{¶ 13} Finally, Murphy testified that in the days leading up to March 24, 2019, Baker and Ferguson would argue and fight with each other, and at times Murphy had to intervene and say "bro, chill out, like don't do that, don't put your hands on her." (Tr. at 348-49.)

{¶ 14} Officer Charles Naples of the Columbus Police Department ("CPD") testified as follows. On March 24, 2019, Naples and his partner responded to a report of an unknown complaint at 33 East Duncan Street, Columbus, Ohio. Naples was very familiar

with the residence because he had responded to many calls at that address. He was also familiar with Baker and Ferguson, as some of the calls to 33 East Duncan Street involved reports of violence between them.

{¶ 15} Upon arrival, Naples knocked on the door to Baker's residence but there was no response, which he testified was very unusual as, in his experience, Baker had always been there during previous calls to the residence. The door was locked, and the officers called the Columbus Fire Department to assist in opening it. Naples' body-worn camera footage was admitted as Exhibit A1, and the woman heard screaming in the background is Wade. Naples testified that based on the officers' initial examination of the body as shown in the footage, they believed foul play was a possibility and so they called for homicide detectives to come out.

{¶ 16} Officer Justin Sidle-Wallace testified that he and his partner Naples responded to 33 East Duncan Street on March 24, 2019. Upon arrival, he made contact with Wade, Murphy, and English. Wade was "kind of in a panic, breathing heavy, kind of incoherent at times" and "seemed very stressed out." (Tr. at 392.) Once the Columbus Fire Department had opened the locked door to the apartment, officers searched the residence and found a body in blankets on a bed in one of the bedrooms. Sidle-Wallace testified that Murphy told him that Ferguson was the one responsible for Baker's death.

{¶ 17} Later that night, Sidle-Wallace encountered Ferguson. Sidle-Wallace was wearing a body-worn camera at the time. Sidle-Wallace's body-worn camera footage showing the encounter was admitted as Exhibit A2. Ferguson was arrested and handcuffed, and he told the arresting officers "something to the effect of '[y]ou got the right one.' " (Tr. at 402.)

{¶ 18} Wade testified that she moved into unit 4 of 33 East Duncan Street on April 14, 2010 and that Baker had moved into the building about a year or two later. Wade testified that English had lived with Baker for a few months up until March 23, 2019, when Baker kicked him out of the residence. Baker threw his belongings down the steps that day, but "[s]he did that to a lot of people." (Tr. Vol II. at 441, 458.) Wade testified that ultimately, English got all of his belongings back from Baker, including "his important papers that he really wanted." (Tr. at 466.)

{¶ 19} Detective Larry Shoaf testified that he is employed by the City of Columbus, Division of Police with the Crime Scene Search Unit. On March 24, 2019, he responded to a crime scene at 33 East Duncan Street, Apartment 3. His responsibility was to take photographs of and document the scene. One of the photographs he took was a posed photograph of a knife that had been discovered in a tool bag in a closet. (State's Ex. D90.) The knife was tested, and it reacted to a substance called "BLUESTAR" which indicates the presence of blood. The knife found in the tool bag in the closet was the only knife found in the residence which reacted to BLUESTAR when tested. The knife was admitted into evidence as Exhibit B20.

{¶ 20} Kevin Jenkins, M.D., is the chief deputy coroner at the Franklin County Forensic Science Center and performed the autopsy of Baker. Dr. Jenkins testified that Baker died due to multiple sharp force injuries. There were 16 stab wounds to Baker's neck. The wounds were predominantly from the back to the front and at a downward angle. Dr. Jenkins designated one of the wounds as "F" indicating it was the fatal wound in this case. The fatal wound caused injuries to the left jugular vein and severed the left internal carotid artery. Dr. Jenkins testified that the fatal wound to Baker would have produced a large volume of blood. Baker also had injuries to her fingers and hands consistent with

defensive wounds. Dr. Jenkins further testified that the knife admitted into evidence as Exhibit B20 was consistent with the injuries sustained by Baker.

**{¶ 21}** The last witness to testify at trial was Jessica Damin, a DNA analyst at the Columbus Police Laboratory. She performed DNA analyses relevant to this case and produced a report of her findings. As part of her analysis, she identified and swabbed staining on the knife admitted into evidence as Exhibit B20.

**{¶ 22}** Damin testified that DNA recovered from the knife by swabbing suspected blood staining was consistent with the DNA of Baker. Swabs taken from the handle of the knife produced a mixture of three DNA standards: one consistent with Baker, one consistent with Ferguson, and a third that was from an unknown contributor. The major profile, however, was the profile consistent with Ferguson's DNA. The unknown contributor could not be identified even after the standard was entered into the "CODIS" database.[1] Finally, Damin testified that no items from the residence other than the knife were tested for the presence of DNA.

**{¶ 23}** At the conclusion of the trial, the jury returned a verdict finding appellant guilty of all three counts for which it heard evidence. The trial court found appellant guilty of the domestic violence count. On August 21, 2020, the trial court issued a Judgment Entry which reflected the verdicts of the jury and the court and imposed an aggregate prison sentence of 18 years to life. (Aug. 21, 2020 Jgmt. Entry.)

**{¶ 24}** This timely appeal followed.

## II. Assignments of Error

**{¶ 25}** Appellant asserts the following eight assignments of error for our review:

---

[1] Damin explained that "CODIS" stands for "Combined DNA Index System" and is "a database of known profiles used by law enforcement for investigative purposes." (Tr. Vol. II. at 641.)

[I.]    The trial court erred by barring Ferguson from introducing evidence material to his defense, in violation of his rights to due process, under the Fifth and Fourteenth Amendments to the United States Constitution and Sections 1 & 16, Article I of the Ohio Constitution, and his right to a fair trial, as guaranteed by the Sixth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution.

[II.]   The trial court plainly erred by conducting portions of the trial outside of Ferguson's presence, in violation of the Sixth Amendment to the United States Constitution.

[III.]  The trial court plainly erred by instructing the jury that it could consider flight as evidence of a consciousness of guilt.

[IV.]   The trial court plainly erred by instructing the jury that it could infer purpose to cause death from Ferguson's use of a deadly weapon.

[V.]    There is insufficient evidence behind the jury finding Ferguson guilty of murder, felony murder, and tampering with evidence, and the trial court finding Ferguson guilty of domestic violence, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Sections 1 & 16, Article I of the Ohio Constitution.

[VI.]   The jury finding Ferguson guilty of murder, felony murder, and tampering with evidence, and the trial court finding Ferguson guilty of domestic violence, are against the manifest weight of the evidence in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Sections 1 & 16, Article I of the Ohio Constitution.

[VII.]  The trial court unlawfully ordered Ferguson to serve consecutive sentences, in violation of his rights to due process, guaranteed by Section 10, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

[VIII.] The trial court erred when it imposed post-release control on Ferguson.

## III.  Discussion

### A.  Assignment of Error I

{¶ 26} In his first assignment of error, Ferguson asserts the trial court erred by barring him from introducing evidence material to his defense, in violation of his rights to due process and his right to a fair trial.  We do not agree.

{¶ 27} The decision to admit or exclude relevant evidence is left to the sound discretion of the trial court, and an appellate court will not disturb that decision absent an abuse of discretion that materially prejudices the defendant.  *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 16, citing *Andrew v. Power Marketing Direct, Inc.*, 10th Dist. No. 11AP-603, 2012-Ohio-4371, ¶ 73, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion "implies that the court's attitude was unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 28} " Relevant evidence" is defined by Evid.R. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is admissible unless prohibited by evidentiary rule, statute, or constitutional provision. Evid.R. 402. "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). "Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision." *State v. J.L.S.*, 10th Dist. No. 08AP-33, 2012-Ohio-181, ¶ 39, citing *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172 (2001).

{¶ 29} Furthermore, any error on the part of the trial court in excluding evidence will be deemed harmless " ' "if such evidence would not negate the overwhelming proof of

defendant's guilt." ' "  *State v. Fudge*, 10th Dist. No. 16AP-821, 2018-Ohio-601, ¶ 40, quoting *State v. Johnson*, 3d Dist. No. 9-10-47, 2011-Ohio-994, ¶ 64, quoting *State v. Gilmore*, 28 Ohio St.3d 190, 193 (1986) . *See also State v. West*, 10th Dist. No. 06AP-111, 2006-Ohio-6259, ¶ 9 (noting that an "appellate court will not reverse a judgment for improper exclusion of evidence on a basis of error that is harmless," and that "error is harmless if the jury would not have rendered a different verdict had the excluded evidence been admitted at trial").

{¶ 30} At trial, Ferguson sought to introduce testimony concerning two 911 calls made by Baker during an encounter with English on March 23, 2019, the day before Baker was murdered.  Baker called 911 to report that English and another person were throwing rocks at her window and banging on her door.  Apparently, English wanted back into the apartment he had been kicked out of in order to retrieve a bottle of pills of some kind.

{¶ 31} The trial court excluded the calls from evidence, finding them irrelevant.  The trial court further found that even if this evidence was relevant, under an Evid.R. 403 analysis, such relevance was substantially outweighed by unfair prejudice to the state and the danger of confusion of issues for the jury.  Ferguson contends this was an abuse of discretion.  It was not.

{¶ 32} Despite Ferguson's theory that English was the real perpetrator of the crime, there was no evidence that showed this.  Ferguson argues the 911 calls made by Baker show English had a "motive" for wanting to murder her, but this is wildly speculative at best, especially in light of the testimony of Wade that English was ultimately able to get all of his belongings back from Baker's apartment before she was killed.

{¶ 33} Furthermore, Ferguson's contention that motive is always relevant in a murder case and therefore this evidence of a possible motive for English to want to kill

Baker misses the mark. The motive that is relevant in a murder case is that of the defendant, not that of a third-party that "might" have been the "real killer." Indeed, the case cited to by Ferguson for this proposition, *State v. Harris*, 10th Dist. No. 09AP-578, 2010-Ohio-1688, and the cases to which it further cites *State v. Dixon*, 10th Dist. No. 98AP-626, (Dec. 5, 2000) and *State v. Lancaster*, 167 Ohio St. 391, 396 (1958) are all cases in which on appeal the defendant objected to the admission of evidence which tended to show he had a motive for killing the victim or victims.

**{¶ 34}** Additionally, Ferguson's argument that because in closing argument he argued that English was the "real" killer without objection, he should have been permitted to introduce the evidence of Baker's 911 calls is meritless. It is well-settled that "[c]losing arguments are not evidence, and the parties are given considerable latitude in making them." *State v. Maurer*, 15 Ohio St.3d 239, 269-70 (1984). Merely because the state did not object to this theory in closing argument does not mean irrelevant and/or unfairly prejudicial evidence ostensibly in support of the theory should have been admitted by the trial court.

**{¶ 35}** Finally, even if the trial court erred in excluding the evidence of Baker's 911 calls, such error was harmless. The remainder of the evidence overwhelmingly supported the jury's conclusion that Ferguson was responsible for Baker's murder. Specifically, Murphy testified that Ferguson told him he had "bodied that bitch." (Tr. at 303.) Murphy testified that Ferguson warned him not to "snitch on Crip [Ferguson]." (Tr. at 286.) Furthermore, Ferguson told Officer Sidle-Wallace that the responding officers "got the right one." (Tr. at 402.) Ferguson's DNA was found on the handle of the knife that evidence in the form of testimony by Detective Shoaf and Dr. Jenkins showed was the murder

weapon. In the face of the foregoing evidence, Ferguson's substantial rights were not affected by excluding the 911 calls.

{¶ 36} Accordingly, Ferguson's first assignment of error is overruled.

**B. Assignment of Error II**

{¶ 37} In his second assignment of error, Ferguson asserts the trial court plainly erred by conducting portions of the trial outside of his presence. We disagree.

{¶ 38} First, Ferguson concedes trial counsel did not object to this alleged error of the trial court and thus has waived all but plain error. Under Crim.R. 52(B), an appellate court may take notice of "plain errors" even when "they were not brought to the attention of the court." For an error to constitute "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings, and (3) the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 39} An appellate court "recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 58 (10th Dist.), citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 139; *State v. Saleh*, 10th Dist. No. 07AP-431, 2009-Ohio-1542, ¶ 68. The defendant bears the burden of demonstrating plain error. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14.

{¶ 40} Here, Ferguson argues it was plain error for him not to have been present for the entirety of voir dire and when the trial court responded to certain jury questions. First, the record shows that Ferguson *was* present for all of the substantive portions of voir dire and was only not present during some housekeeping communications between the trial

court and the jury. Second, although the state concedes Ferguson was not present during the conference between the trial court and counsel regarding the jury's questions, the reason he was not present is because Ferguson had to be placed in a COVID quarantine status at the jail and could not be transported to the courthouse the day in question.

{¶ 41} Counsel for Ferguson did not object to his absence from the courthouse that day; therefore, any alleged error is subject to a "plain error" analysis. Ferguson does not explain how this alleged error affected his "substantial rights," meaning how the alleged error affected the outcome of the trial, and we do not find that it did. Specifically, when the trial court responded to the jury's questions, it simply advised the jury that "you have received all the testimony and evidence. You must rely on your collective memory to decide all factual issues." (Tr. Vol. II. at 761, 763.) It defies reason to conclude that such an answer provided to the jury would have affected their ultimate verdict. As noted in our discussion pertaining to Assignment of Error I, the evidence supporting a finding of guilt on the part of Ferguson was overwhelming. There was no error, plain or otherwise, on the part of the trial court in permitting Ferguson's absence during the jury question conference. Even if there was any error, it did not affect the outcome of the trial.

{¶ 42} Accordingly, Ferguson's second assignment of error is overruled.

## C. Assignments of Error III and IV

{¶ 43} Ferguson's third and fourth assignments of error pertain to certain jury instructions given by the trial court, and we address them together. In his third assignment of error, Ferguson contends the trial court plainly erred by instructing the jury that it could consider Ferguson's flight from the scene as consciousness of his own guilt. In his fourth assignment of error, Ferguson maintains the trial court plainly erred by instructing the jury that a knife is a deadly weapon. Neither assignment of error has merit.

{¶ 44} Ferguson concedes that trial counsel did not object to these jury instructions given by the trial court and thus has waived all but plain error under Crim.R. 52(B). We discussed the standard for considering plain error above and will not repeat ourselves. In addition to the standard as set forth above, we specifically observe that "[a] jury instruction does not constitute plain error unless, but for the error, the verdict would have been otherwise." *State v. Philpot*, 10th Dist. No. 03AP-758, 2004-Ohio-5063, ¶ 21, citing *State v. Long*, 53 Ohio St.2d 91 (1978), *certiorari denied*, 465 U.S. 1106, (1984). Thus, under the plain error standard, Ferguson must establish that, if the allegedly erroneous instructions had not been given, he would have been acquitted.

{¶ 45} Here, Ferguson has not met this burden. Indeed, he has not presented any argument as to how the verdict would have been anything other than guilty had these instructions not been given. As discussed under Ferguson's first assignment of error, the evidence supporting a finding of guilt on the part of Ferguson was overwhelming. Simply put, based on the record, Ferguson cannot demonstrate that the outcome of the trial would have been different if the trial court had not provided these two instructions and thus, he cannot establish the requisite prejudice to require reversal.

{¶ 46} Accordingly, Ferguson's third and fourth assignments of error are overruled.

## D. Assignments of Error V and VI

{¶ 47} Ferguson's fifth and sixth assignments of error challenge the sufficiency and weight of the evidence and we address them together. Ferguson asserts that the evidence was insufficient to support his convictions for murder, felony murder, tampering with evidence, and domestic violence, and that the verdicts for same are against the manifest weight of the evidence. We find no merit in either of these assignments of error.

{¶ 48} "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A reviewing court will not disturb the jury's verdict unless the court finds "that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001), citing *Jenks* at 273.

{¶ 49} In a review for sufficiency of the evidence, we do not engage in a determination of the credibility of the witnesses. *State v. Woodward*, 10th Dist. No. 03AP-398, 2004-Ohio-4418, ¶ 16, citing *State v. Goff*, 82 Ohio St.3d 123, 139 (1998). Rather, "we essentially assume the state's witnesses testified truthfully and determine if that testimony satisfies each element of the crime." *Id.*, citing *State v. Gore*, 131 Ohio App.3d 197, 200-01 (7th Dist.1999). Furthermore, the testimony of one witness, if believed by the jury, is sufficient to support a conviction. *State v. Winston*, 10th Dist. No. 16AP-664, 2018-Ohio-2525, ¶ 21, citing *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 50} Comparatively, "[w]hile sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate

court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  This discretionary authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 51}  Furthermore, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Gullick*, 10th Dist. No. 13AP-317, 2014-Ohio-1642, ¶ 10, quoting *State v. Nivens*, 10th Dist. No. 95APA09-1236 (May 28, 1996).  "A jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony." *Id.*, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 52}  A conviction is not against the manifest weight of the evidence simply because the jury believed the state's version of events over the appellant's version.  *Gullick* at ¶ 11, citing *State v. Houston*, 10th Dist. No. 04AP-875, 2005-Ohio-4249, ¶ 38 (reversed and remanded in part on other grounds.)  Rather, a reviewing court must give great deference to the jury's determination of witness credibility.  *Id.*, citing *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, ¶ 19.  This is so because the jury " ' "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' " *State v. Huber*, 10th

Dist. No. 18AP-668, 2019-Ohio-1862, ¶ 32, quoting *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 53} As stated previously, Ferguson challenges his convictions for murder, in violation of R.C. 2903.02(A); felony murder, in violation of R.C. 2903.02(B); tampering with evidence, in violation of R.C. 2921.12(A)(1); and domestic violence, in violation of R.C. 2919.25(A).

### 1. Murder and Felony Murder

{¶ 54} In order to convict a defendant of murder in violation of R.C. 2903.02(A), the state must prove the defendant purposely caused the victim's death.

{¶ 55} In order to convict a defendant of felony murder in violation of R.C. 2903.02(B), the state must prove the defendant caused the death of another "as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." R.C. 2903.02(B). In this case Ferguson was charged with murder as a proximate result of felonious assault which is an offense of violence. R.C. 2901.01(A)(9)(a) (including R.C. 2903.11, felonious assault, in the definition of "offense of violence".)

{¶ 56} "The law has long recognized that intent, lying as it does within the privacy of a person's own thoughts, is not susceptible of objective proof." *State v. Garner*, 74 Ohio St.3d 49, 60 (1995), citing *State v. Carter*, 72 Ohio St.3d 545, 554 (1995). Intent to kill "may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of

inflicting a fatal wound." *State v. Robinson*, 161 Ohio St. 213 (1954), paragraph five of the syllabus; *see also State v. Eley*, 77 Ohio St.3d 174, 180 (1996).

{¶ 57} In this case, Ferguson's arguments notwithstanding, there was sufficient evidence to meet all elements of the murder and felony murder counts. First, eyewitness testimony is not necessary to establish the elements of the offenses for which Ferguson was charged, and he has cited no authority for such a novel proposition. Furthermore, the evidence in the form of the testimony of Murphy, Officer Naples, and Officer Sidle-Wallace showed the jury that Baker and Ferguson had a history of a contentious and sometimes violent relationship. And Ferguson's own statements and admissions to Murphy that he "bodied that bitch" and "there's a dead body in there," that the officers "got the right one," and his warning to Murphy that he shouldn't "snitch on Crip" all support a conclusion that Ferguson was responsible for Baker's death.

{¶ 58} Moreover, there is no dispute that Baker died as a result of multiple sharp force injuries sustained to her head and neck. Those injuries were inflicted with a knife, which there is no doubt constitutes a deadly weapon in this case. *See* R.C. 2923.11(A) (defining "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." *See also* R.C. 2903.11(E)(1) (incorporating the definition provided by R.C. 2923.11(A)). The evidence in the form of testimony from Dr. Jenkins shows there were 16 stab wounds to Baker's neck and that Baker's hands and fingers sustained defensive wounds. The extent and severity of Baker's injuries and the manner in which they were inflicted was sufficient evidence for the jury to conclude Ferguson acted purposely to kill Baker. *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 36, citing *State v.*

*Scudder*, 71 Ohio St.3d 263, 274 (1994) (stating "the number and nature of [the victim's] stab wounds clearly established [the defendant's] purpose to kill").

**{¶ 59}** Likewise, the evidence discussed above was also sufficient to support the jury's conclusion that Baker's death occurred as a proximate result of felonious assault, i.e., that Ferguson knowingly caused serious physical harm to Baker by means of a deadly weapon, proximately causing Baker's death.  Thus, there was sufficient evidence for the jury to find Ferguson guilty of both murder and felony murder.

**{¶ 60}** The manifest weight of the evidence also supports Ferguson's convictions for murder and felony murder.  First and foremost, Ferguson has not identified any conflict in the evidence, nor does the record evince any such conflicting evidence.  "[A] prerequisite for any reversal on manifest-weight grounds is conflicting evidence, more specifically, evidence weighing ' "heavily against the conviction," ' such that ' " the jury clearly lost its way and created such a manifest miscarriage of justice." ' "  *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 20, quoting *Thompkins* at 387, quoting *Martin* at 175.  There is no evidence weighing heavily against the convictions in this case.

**{¶ 61}** Furthermore, Ferguson's argument that there was no evidence to support any motive he would have to kill Baker is meritless. Motive is not an element of the crimes for which Ferguson was charged and the state did not have to prove motive in order to sustain a conviction for murder.  Moreover, the testimony of several of the state's witnesses, discussed at length above, shows there was ongoing acrimony between Ferguson and Baker.  That evidence, particularly when coupled with Murphy's specific testimony regarding the escalation of the discord between Ferguson and Baker in the days leading up to March 24, 2019, would readily permit the jury to conclude that the acrimony between

Ferguson and Baker had escalated even further by March 24, 2019, to the point where Ferguson murdered Baker.

{¶ 62} In short, the jury did not clearly lose its way in finding Ferguson guilty of murder and felony murder. Merely because it chose to find the state's witnesses credible does not mean Ferguson's convictions were against the manifest weight of the evidence.

### 2. Tampering with Evidence

{¶ 63} R.C. 2921.12(A)(1) defines tampering with evidence and provides: "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." To convict Ferguson of tampering with evidence, the state needed to submit sufficient evidence for the trier of fact to conclude Ferguson knew or should have known an investigation was forthcoming but nevertheless purposely took steps to conceal the murder weapon and/or his fingerprints in the apartment.

{¶ 64} Here, Murphy testified that the entire apartment had been cleaned except for one room and that he had never seen it so clean. Dr. Jenkins testified that the fatal wound sustained by Baker would have produced a large volume of blood, yet a large volume of blood was not found at the scene. Photographs of the crime scene admitted into evidence showed cleaning supplies and tools. Detective Shoaf testified that the knife that was recovered having DNA consistent with Ferguson on the handle and DNA consistent with Baker on the blade was found inside a tool bag in a closet. All of the foregoing evidence is more than enough to permit the jury to conclude that evidence at the scene had been cleaned, altered and/or attempted to be concealed.

{¶ 65} Furthermore, the identification of Ferguson as the one responsible for cleaning, altering, or otherwise attempting to conceal evidence at the crime scene could be readily inferred from the same evidence supporting his being responsible for Baker's murder. Ferguson's argument that the evidence is insufficient because his DNA was not found on the mop handle is meritless. The presence of DNA is not an element of the offense of tampering with evidence and Damin testified that no items in the apartment other than the knife were tested for DNA.

{¶ 66} Thus, based upon the foregoing, the state presented sufficient evidence to allow the jury to find, beyond a reasonable doubt, that Ferguson purposely concealed evidence pivotal to the investigation into Baker's death. *State v. Miller*, 10th Dist. No. 14AP-851, 2015-Ohio-4678, ¶ 32.

{¶ 67} The manifest weight of the evidence also supports Ferguson's conviction for tampering with evidence. First, as noted previously, Ferguson has not identified any conflicting evidence pertaining to this count. This alone negates his argument that his conviction for tampering with evidence is against the manifest weight of the evidence. Furthermore, the evidence discussed above under our sufficiency analysis would readily permit the jury to conclude that Ferguson was responsible for cleaning the apartment in an attempt to alter or conceal evidence knowing that an investigation into Baker's death was likely to be instituted.

{¶ 68} In sum, the jury did not clearly lose its way in finding Ferguson guilty of tampering with evidence, and the jury's choice to credit the testimony of the state's witnesses does not mean Ferguson's conviction for tampering with evidence was against the manifest weight of the evidence.

### 3. Domestic Violence

{¶ 69} R.C. 2919.25(A) defines domestic violence and provides, in pertinent part: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." A "[f]amily or household member" includes "a person living as a spouse* * *" "who is residing * * * with the offender." R.C. 2919.25(F)(1)(a)(i).

{¶ 70} Here, the evidence showed that Ferguson and Baker shared a residence and had done so for several years. Murphy testified that Baker and Ferguson were a couple. Furthermore, Murphy specifically testified that Ferguson and Baker shared a cell phone. From this, the trial court could have inferred that Ferguson and Baker comingled assets and were therefore living as a spouse of one another. Based on the foregoing, we find the state presented sufficient evidence to permit the trial court to find, beyond a reasonable doubt, that Ferguson knowingly caused or attempted to cause physical harm to a family or household member.

{¶ 71} Nor did the trial court clearly lose its way in finding Ferguson guilty of domestic violence, and merely because it chose to find the testimony of the state's witnesses credible does not mean Ferguson's conviction for domestic violence was against the manifest weight of the evidence.

{¶ 72} Therefore, for all of the reasons discussed above, we find sufficient evidence supports all of Ferguson's convictions and that Ferguson's convictions are not against the manifest weight of the evidence. Accordingly, we overrule Ferguson's fifth and sixth assignments of error.

## E. Assignment of Error VII

{¶ 73} In his seventh assignment of error, Ferguson asserts the trial court erred in ordering him to serve consecutive sentences. We agree.

{¶ 74} We begin our discussion by observing that pursuant to R.C. 2953.08(G)(2), an appellate court will reverse a trial court's sentencing decision "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. This court must "look to the record to determine whether the sentencing court considered and properly applied the statutory guidelines and whether the sentence is otherwise contrary to law." *State v. Reeves*, 10th Dist. No. 14AP-856, 2015-Ohio-3251, ¶ 4.

{¶ 75} " 'Under Ohio law, absent an order requiring sentences to be served consecutively, terms of incarceration are to be served concurrently.' " *State v. Guy*, 10th Dist. No. 17AP-322, 2018-Ohio-4836, ¶ 56, quoting *State v. Sergent*, 148 Ohio St.3d 94, 2016-Ohio-2696, ¶ 16, citing R.C. 2929.41(A). A trial court may, in its discretion, impose consecutive sentences for multiple prison terms pursuant to R.C. 2929.14(C)(4). *Id.* Before imposing consecutive sentences, the trial court must find that: (1) the consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) at least one of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or

> unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).  Thus, pursuant to R.C. 2929.14(C)(4), in order to impose consecutive terms of imprisonment, a trial court is required to make at least three distinct findings: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) that one of the subsections (a), (b), or (c) applies.  *State v. Price*, 10th Dist. No. 13AP-1088, 2014-Ohio-4696, ¶ 31, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177.

{¶ 76} In *Bonnell*, the Supreme Court of Ohio held that a trial court seeking to impose consecutive sentences must make the findings required by R.C. 2929.14(C)(4) "at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *Bonnell* at syllabus. Nor is the trial court "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.* at ¶ 37.  "[A] word-for-word recitation of the language of the statute is not required," and "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29.

{¶ 77} "In determining whether the trial court engaged in the correct analysis, an appellate court 'may liberally review the entirety of the sentencing transcript to discern

whether the trial court made the requisite findings.' " *State v. Hairston*, 10th Dist. No. 17AP-416, 2017-Ohio-8719, ¶ 8, quoting *State v. Stephen*, 7th Dist. No. 14 BE 0037, 2016-Ohio-4803, ¶ 22. Furthermore, "once the trial court makes the factual findings required by R.C. 2929.14(C)(4), an appellate court may overturn the imposition of consecutive sentences only if it finds, clearly and convincingly, that the record does not support the sentencing court's findings or that the sentence is otherwise contrary to law." *State v. Hargrove*, 10th Dist. No. 15AP-102, 2015-Ohio-3125, ¶ 22.

{¶ 78} In this case, the judgment entry includes the following findings pertaining to the imposition of consecutive sentences:

> The Court made factual findings on the record to support all of the following as it relates to a consecutive sentence. The Court finds that this consecutive sentence is necessary to protect the public from future crimes or to punish the offender and consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public, and the offender committed one or more of the multiple offenses while awaiting trial or sentencing.
>
> Further, two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct. Finally, the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

(Aug. 21, 2020 Jgmt. Entry.) The sentencing transcript shows a very brief statement by the trial court explaining the consecutive sentences. The entirety of the statement is as follows:

> The sentence of the Court will be as follows: As to Count One, the Court imposes a sentence of life with parole eligibility after 15 years. That will run consecutive to a 36-month sentence as to Count Three.

> The Court finds that consecutive sentences are necessary to protect the public from future harm and to - - to punish the offender.  The Court finds that the conviction for tampering with evidence constitutes a distinct harm and that it is an attempt to obstruct justice.

(Aug. 5, 2020 Tr. at 785.)

{¶ 79}   As previously set forth, a trial court seeking to impose consecutive sentences must make the findings required by R.C. 2929.14(C)(4) "*at the sentencing hearing* and incorporate its findings into its sentencing entry * * *." (Emphasis added.)  *Bonnell* at syllabus.  While we opine that the  findings necessary pursuant to R.C. 2929.14(C)(4) were sufficiently stated in the judgment entry, even a liberal view of the transcript reveals they were not sufficiently stated at the sentencing hearing.  Specifically, although the initial finding required by R.C. 2929.14(C)(4)–i.e., that the consecutive sentence is necessary to protect the public from future crime or to punish the offender–is satisfied by the trial court's statement as set forth above, the trial court failed to find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.  The trial court further failed to make a distinct finding that one of the subsections set forth in R.C. 2929.14(C)(4)(a) through (c) applies.  Therefore, pursuant to R.C. 2953.08(G)(2), the trial court's imposition of consecutive sentences without considering and making the requisite findings under R.C. 2929.14(C)(4) is contrary to law.

{¶ 80} Accordingly, based on the foregoing, we sustain Ferguson's seventh assignment of error.

F.  **Assignment of Error VIII**

{¶ 81} For his eighth assignment of error, Ferguson asserts the trial court erred when it imposed post-release control on him.  We agree.

{¶ 82} Murder "is an unclassified felony to which the post-release control statute does not apply." *State v. Silguero*, 10th Dist. No. 11AP-274, 2011-Ohio-6293, ¶ 8, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 36; *State v. Gripper*, 10th Dist. No. 10AP-1186, 2011-Ohio-3656, ¶ 10. Thus, where multiple counts are merged for purposes of sentencing, one of which counts is for murder, it is improper to impose post-release control language in the sentencing entry. *See id*; *see also State v. Alford*, 2nd Dist. No. 24368, 2012-Ohio-3490, ¶ 15.

{¶ 83} Here, the state concedes the trial court erred in imposing post-release control for the domestic violence conviction because it had merged with the conviction for murder for purposes of sentencing. As noted above, we agree it was error to impose post-release control on Ferguson.

{¶ 84} Accordingly, Ferguson's eighth assignment of error is sustained.

## IV.  Disposition

{¶ 85} Based on the foregoing, Ferguson's first, second, third, fourth, fifth, and sixth assignments of error are overruled. Ferguson's seventh and eighth assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded for further proceedings consistent with this decision.

*Judgment reversed and cause remanded.*

SADLER, J. concurs.
LUPER SCHUSTER, PJ., concurring in part and dissenting in part.

LUPER SCHUSTER, P.J., concurring in part and dissenting in part.

{¶ 86} I agree with the majority's resolution of appellant Jared T. Ferguson's first, second, third, fourth, fifth, sixth, and eighth assignments of error. However, because I would overrule Ferguson's seventh assignment of error, I respectfully dissent in part.

{¶ 87} Ferguson's seventh assignment of error challenges the trial court's imposition of consecutive sentences. At issue is whether the trial court imposed consecutive sentences without making the findings at the sentencing hearing as required under R.C. 2929.14(C)(4). The majority concludes the trial court did not make these findings. I disagree.

{¶ 88} To impose consecutive sentences, the trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) at least one of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4). These findings must be made both at the sentencing hearing and in the sentencing entry. *State v. Peoples*, 10th Dist. No. 21AP-45, 2022-Ohio-953, ¶ 63.

{¶ 89} A court need not state reasons to support its findings, nor is the trial court required to use the precise language of this statute. *State v. Richards*, 10th Dist. No. 19AP-259, 2019-Ohio-5325, ¶ 10. "[A]ppellate courts have been fairly deferential to the trial court when reviewing the transcript of a sentencing hearing to determine whether the trial court has made the findings required by R.C. 2929.14(C)(4)." *State v. Hargrove*, 10th Dist. No. 15AP-102, 2015-Ohio-3125, ¶ 19. For example, in *Richards*, this court determined "the trial court's statement at the sentencing hearing that 'the two offenses constitute separate and distinguishable harms and that no single prison sentence for any term would adequately punish the offender or protect the public from future harm' is akin to a finding under R.C. 2929.14(C)(4)(b), and, as such, constitutes a factual finding on which this court can conclude that the sentencing court found that consecutive service is not disproportionate to the seriousness of appellant's conduct." *Richards* at ¶ 26.

{¶ 90} Here, at the sentencing hearing, the trial court stated the following concerning the imposition of consecutive sentences:

> The sentence of the Court will be as follows: As to Count One [the murder count], the Court imposes a sentence of life with parole eligibility after 15 years. That will run consecutive to a 36-month sentence as to Count Three [the tampering with evidence count].
>
> The Court finds that consecutive sentences are necessary to protect the public from future harm and to -- to punish the offender. The Court finds that the conviction for tampering with evidence constitutes a distinct harm and that it is an attempt to obstruct justice.

(Tr. Vol. II at 785.) In my view, this language substantively equates to the language this court in *Richards* found to be sufficient, under the deferential standard, to meet the R.C.

2929.14(C)(4) requirements.  Even though "it would have been better practice for the trial court to recite the statute's verbiage," the necessary findings are reflected in the trial court's statements.  *Richards* at ¶ 28.  And as in *Richards*, the trial court's "deviation from the statutory language in the present case is not so egregious as to render the trial court's sentence clearly and convincingly contrary to law."  *Id.* at ¶ 28.  Therefore, I would overrule Ferguson's seventh assignment of error.

For these reasons, I respectfully concur in part and dissent in part.