[Cite as *State v. Cook*, 2023-Ohio-256.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2022-02-016<br>CA2022-02-017 |
| - vs - | : | O P I N I O N<br>1/30/2023 |
| MARQUAN C. COOK, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2020-10-1364

Michael T. Gmoser, Butler County Prosecuting Attorney, and John C. Heinkel, Assistant Prosecuting Attorney, for appellee.

L. Patrick Mulligan & Associates L.L.C., and L. Patrick Mulligan and Frank Matthew Batz, for appellant.

**HENDRICKSON, J.**

{¶1}   Appellant, Marquan C. Cook, appeals from his convictions in the Butler County Court of Common Pleas for murder, felonious assault, and having weapons while under disability.  For the reasons set forth below, we affirm appellant's convictions.

{¶2}   On October 23, 2020, appellant was indicted on one count of murder in

violation of R.C. 2903.02(A) and one count of murder in violation of R.C. 2903.02(B), both unclassified felonies, one count of felonious assault in violation of R.C. 2903.11(A)(2) (deadly weapon) and one count of felonious assault in violation of R.C. 2903.11(A)(1) (serious physical harm), both felonies of the second degree, and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2) (prior conviction for a felony offense of violence) and one count of having weapons while under disability in violation of R.C. 2923.13(A)(3) (under indictment for a felony offense involving drugs of abuse), felonies of the third degree. The murder and felonious assault charges were accompanied by a firearm specification as set forth in R.C. 2941.145. The charges arose out of allegations that on October 11, 2020, appellant shot and killed Brandon Moneyham outside the 513 Lounge in Middletown, Butler County, Ohio.

{¶3} Appellant pled not guilty to the offenses and a three-day jury trial commenced on December 13, 2021. At trial, appellant stipulated that he had a prior conviction for a felony offense of violence and that he was under indictment for a felony drug abuse offense, both of which precluded him from being in possession of a firearm. The state presented testimony from Korie Roberts, appellant's former girlfriend and an eyewitness to the shooting, appellant's parole officer, various law enforcement officers who participated in the investigation of Moneyham's death, a forensic scientist and firearms examiner from the Ohio Bureau of Criminal Identification and Investigation ("BCI"), and Dr. Gary Utz, the forensic pathologist who performed an autopsy on Moneyham. Appellant testified on behalf of his own defense. From the testimony and exhibits admitted at trial, the following facts were established.

{¶4} On October 10, 2020, appellant drove Roberts to and from work so that he could keep and use her car, a black Kia. When Roberts' workday ended, appellant drove

- 2 -

her to a friend's house. He then picked her up around 8:30 or 9:00 p.m. that evening. Appellant had one of his friends in the car, James Griffith. Appellant, Roberts, and Griffith drove around Middletown before ending up at J-Rocks, a bar. After spending between an hour to 90 minutes at J-Rocks, the trio left and went to another bar, the 513 Lounge on Verity Parkway in Middletown. Though Roberts drove to the 513 Lounge, she had appellant park her car "in the back." Roberts exited her car and got into the car of one of her friends. After visiting with her friend for about 20 minutes, Roberts and her friend entered the 513 Lounge. Appellant entered the bar shortly thereafter.

{¶5} After about 25 minutes inside the bar, Roberts decided to take her purse out to the car. Appellant, still in possession of the car keys, followed her outside. As Roberts was putting her purse in the car on the passenger side of the vehicle, she heard a "click." When she looked up, she saw an unarmed Moneyham standing with his hands up. She then saw appellant with a gun, shooting at Moneyham. Roberts estimated appellant fired his firearm six or seven times before fleeing the scene. Roberts did not observe anyone else with a gun at the time Moneyham was shot.

{¶6} Officers from the Middletown Police Department were dispatched to the scene at 12:51 a.m., mere minutes after the shooting occurred. They found Moneyham lying deceased in the parking lot next to his sunglasses and keys. The scene was secured and processed for evidence. Officers recovered eight spent shell casings, all 9 mm but of various manufacturing origins. The eight casings were subsequently submitted to BCI for forensic analysis. Andrew McClelland, a forensic scientist and expert in the field of firearms examination and identification, determined that all eight casings had been fired by the same firearm. However, that firearm was never recovered. Detective Jason Wargo testified that the shell casings were not submitted for DNA or fingerprinting analysis as the heat from the

cartridge firing would have destroyed any such evidence.

{¶7} Officers on the scene of the shooting spoke with those present to see if there had been any witnesses. Roberts spoke with one officer, but she was not forthcoming about what she had observed. She was also not forthcoming about the events when she was interviewed at the police station later that day. Roberts stated she was "scared" and worried that something would happen to her if she told officers about what she had witnessed. Two days after the shooting, Roberts went back to the police station to report that she had seen appellant shoot Moneyham on October 11, 2020. Roberts testified there was "no doubt" in her mind that appellant had shot Moneyham. She indicated she ultimately came forward because she "felt like doing the right thing" and because Moneyham's "family need[ed] justice."

{¶8} An autopsy was performed on Moneyham. Dr. Utz found that the 36-year-old victim had sustained five gunshot wounds to his body: two wounds to his left hip area, one wound to his right hand, one wound to his left forearm, and one wound to his left chest. The gunshot wound to Moneyham's chest was fatal, as the bullet entered the chest cavity and perforated his heart before becoming lodged in his spine. Dr. Utz recovered the bullet from Moneyham's spine as well as a bullet that was lodged in Moneyham's left hip.

{¶9} Appellant was on parole at the time of the shooting and was wearing a GPS ankle monitor. Data from the ankle monitor placed appellant at the scene of the shooting and confirmed his flight from the scene. Around 4:00 a.m. on October 11, 2020, mere hours after the shooting had occurred, data was received that the ankle monitor had been tampered with. Appellant had cut the ankle monitor off near his mother's home on Vernon Avenue in Dayton, Ohio, where he was believed to have been residing. A search of this residence was conducted by law enforcement. Although officers did not locate a firearm,

they did find a box of ammunition on the home's mantle.

{¶10} Appellant fled Ohio immediately after the shooting occurred. He was extradited from Florida between November 12, 2020 and November 20, 2020.

{¶11} At trial, appellant admitted that he had been in possession of Roberts' car on October 10, 2020, and that he, Griffith, and Roberts went to the 513 Lounge after spending some time at J-Rocks. Appellant stated he parked Roberts' car at the 513 Lounge, leaving him in possession of the car keys. He stated he sat in Roberts' car for some time talking with Griffith before he decided to "peep the scene" by looking inside the bar. Although he saw a person he was not comfortable with inside, he nonetheless decided to enter the bar. Roberts was already inside the bar, as was Moneyham.

{¶12} Appellant testified that he did not know Moneyham, but had "seen him around." He denied that he had "beef" or a dispute with Moneyham and stated he did not engage Moneyham in conversation inside the bar. Appellant testified he felt awkward and "out of place" inside the 513 Lounge and tried to get Roberts to leave the bar with him. When she refused, he and Griffith left the bar and went to sit in her car for a while. Ten minutes later, he reentered the bar and again asked Roberts to leave. When she refused, appellant went back outside the bar. Approximately ten minutes later, Roberts, her friend, and a few other women exited the bar. Appellant claims Roberts went to her friend's car and sat inside it.

{¶13} While this occurred, an "unfamiliar person" walked out of the bar and a black Jeep Cherokee pulled up by the bar, stopping in the middle of Clark Street. The "unfamiliar person" called appellant over, but appellant refused to go. Appellant claims he then heard gunfire and tried to take cover behind Roberts' car, where Griffith was also taking cover. Appellant estimated 12 shots were fired before the "unfamiliar person" jumped in the Jeep

and the vehicle took off. Appellant did not see anyone except Moneyham in the middle of the parking lot while shots were being fired. Once the shooting ended, appellant stated he and Griffith took off running. Notably, the two men ran towards, rather than away from, the Jeep Cherokee.

{¶14} Appellant claimed that while running from the scene, he "lost" Griffith. About a minute after he first started running, appellant got into the car of a "black older dude" nicknamed "Pookie." Appellant testified he had seen Pookie before around the bars. Pookie drove appellant away from the scene and dropped him off close to appellant's mother's home. Appellant began scrolling through Facebook and saw information about the shooting. He decided to cut his ankle monitor off and flee the state. He stated, "I felt like I needed to leave. I felt like I was scared that somebody was trying to get me[.]"

{¶15} When questioned about the identity of the person he believed was trying to harm him, appellant responded that it was "[a] previous male I had an altercation with." According to appellant, the altercation took place in 2016, involved a person who stayed in Middletown, and this person was bigger than appellant and intimidated him. Appellant eventually identified the individual as Derrick Snowden. However, appellant admitted Snowden was not at the 513 Lounge on the night of the shooting and was not the "unfamiliar person" who had made him uncomfortable at the bar. Rather the person who had made him uncomfortable was a man appellant believed did "hits." Appellant believed Snowden had "hired someone to do something to [him]." Despite his perceived risk from Snowden or the man Snowden allegedly hired to do a hit, appellant never filed a police report or spoke to authorities about his concerns.

{¶16} After hearing the foregoing testimony, the jury found appellant guilty of all charged offenses, including the firearm specifications. Following the merger of allied

- 6 -

offenses, appellant was sentenced to 15 years to life in prison for murder in violation of R.C. 2903.02(A). The court imposed a mandatory and consecutive term of three years in prison on the accompanying firearm specification. Appellant was also sentenced to 36 months in prison for having weapons while under disability in violation of R.C. 2929.13(A)(2). This sentence was run consecutively to his sentence for murder. Finally, appellant was sentenced to a consecutive one-year prison term for a violation of postrelease control, for a total aggregate sentence of 22 years to life in prison.

{¶17} Appellant appealed his convictions, raising three assignments of error for review. For ease of discussion, we will address his first and second assignments of error together.

{¶18} Assignment of Error No. 1:

{¶19} APPELLANT'S CONVICTION[S] [WERE] BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW.

{¶20} Assignment of Error No. 2:

{¶21} APPELLANT'S CONVICTION[S] [WERE] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶22} In his first and second assignments of error, appellant argues his convictions for murder, felonious assault, and having weapons while under disability were not supported by sufficient evidence and were against the manifest weight of the evidence. Appellant argues the state failed to demonstrate that he possessed a weapon, that he had motive to shoot the victim, or that he shot and killed Moneyham. He contends Roberts' testimony that she saw him in possession of a gun and shooting Moneyham outside the 513 Lounge was not credible and should not have been relied upon by the jury.

{¶23} Whether the evidence presented at trial is legally sufficient to sustain a verdict

is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶24}** On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387

(1997). Further, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

**{¶25}** Appellant was convicted of murder in violation of R.C. 2903.02(A), which provides that "[n]o person shall purposely cause the death of another." He was also convicted of murder in violation of R.C. 2903.02(B), which prohibits an individual from causing another's death "as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." The underlying felony for which appellant was convicted was felonious assault in violation of R.C. 2903.11. R.C. 2903.11(A)(1) prohibits one from knowingly causing serious physical harm to another, and R.C. 2903.11(A)(2) prohibits one from knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordinance. The firearm specification accompanying each murder and felonious assault charge required the state to prove that appellant had a firearm on or about his person or under his control while committing the murder and felonious assault offenses and that he displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used the firearm to facilitate the offenses. R.C. 2941.145.

**{¶26}** Appellant was also convicted of having weapons while under disability in violation of R.C. 2923.13(A)(2) and (A)(3) which, respectively, prohibits a person from knowingly acquiring, having, carrying, or using a firearm or dangerous ordinance if they have been convicted of a felony offense of violence or if they are under indictment for a felony offense involving the illegal possession, use, sale, administration, distribution, or

trafficking in any drug of abuse.

{¶27} "It is well settled that in order to warrant a conviction, the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime at issue." *State v. Jividen*, 12th Dist. Warren No. CA2020-10-067, 2021-Ohio-2720, ¶ 11, citing *State v. Harner*, 12th Dist. Brown No. CA2019-10-012, 2020-Ohio-3071, ¶ 13. "The identity of the accused as the perpetrator of the crime may be established by direct or circumstantial evidence." *Id.* Circumstantial and direct evidence have the same probative value. *State v. Lee*, 12th Dist. Fayette Nos. CA2020-09-014 and CA2020-09-015, 2021-Ohio-2544, ¶ 25.

{¶28} After thoroughly reviewing the record, we find that appellant's convictions for murder, felonious assault, and having weapons while under disability are supported by sufficient evidence and are not against the manifest weight of the evidence. The state presented testimony and evidence from which the jury could have found all the essential elements of the offenses proven beyond a reasonable doubt. Appellant stipulated he was under disability due to a prior conviction for a felony offense of violence and indictment for a felony drug abuse offense and was therefore prohibited from knowingly carrying or using a firearm. Despite this prohibition, Roberts testified she saw appellant in possession of a firearm on October 11, 2020. Specifically, Roberts testified she saw appellant point a gun at Moneyham outside the 513 Lounge and fire the weapon multiple times before fleeing the scene. Moneyham suffered serious physical harm as he received five gunshot wounds to his body, including a fatal wound to the chest cavity. Testing of the eight shell casings recovered from the scene demonstrated that they had been fired by the same firearm. Roberts' testimony, if believed by the jury, was enough to prove facts of consequence – that appellant was in possession of a firearm and that he shot Moneyham. *See State v. Ruggles*,

12th Dist. Warren Nos. CA2019-05-038 and CA2019-05-044 thru CA2019-05-046, 2020-Ohio-2886, ¶ 53 ("One witness's testimony is enough to prove a fact of consequence").

{¶29} Appellant challenges Roberts' credibility and the weight given to her testimony. Appellant notes that Roberts did not inform officers of what she had witnessed when she was first questioned at the scene or when questioned later that day at the police station. Rather, Roberts waited until two days after the shooting before disclosing to law enforcement that she had seen appellant shoot Moneyham. Appellant contends this delay casts doubt on the truthfulness of her testimony. He argues that without Roberts' testimony there is no evidence establishing that he possessed a firearm or shot at Moneyham, noting that no firearm was recovered and fingerprint and DNA testing was not conducted on the recovered bullet casings.

{¶30} Appellant further contends his version of events is more credible – that it was a "hit man" hired by a "previous male [he] had an altercation with" who fired the bullets towards where appellant was taking cover, striking Moneyham in the process. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. This is because, "[a]s the trier of fact in [the] case, the jury was in the best position to judge the credibility of witnesses and the weight to be given to the evidence." *State v. Johnson*, 12th Dist. Warren Nos. CA2019-07-076 and CA2019-08-080, 2020-Ohio-3501, ¶ 24. The jury considers any inconsistencies in the witnesses' testimony and resolves them accordingly, believing all, part, or none of each witnesses' testimony. *State v. Enoch*, 12th Dist. Butler No. CA2019-07-117, 2020-Ohio-3406, ¶ 27. Here, the jury clearly found Roberts' testimony and version of events credible. They believed appellant possessed a firearm and that he shot the

firearm multiple times, striking and killing Moneyham. Appellant's actions immediately after the shooting – running from the scene, cutting off his ankle monitor, and fleeing to the state of Florida, all evidence of his consciousness of guilt – further support the jury's guilty verdict.

**{¶31}** Furthermore, contrary to appellant's claims, the state was not required to produce DNA evidence or fingerprint evidence linking him to the bullet casings or to a firearm to secure a conviction. *See State v. Poindexter*, 10th Dist. Franklin No. 19AP-394, 2021-Ohio-1499, ¶ 22; *State v. Nicholson*, 8th Dist. Cuyahoga No. 110595, 2022-Ohio-2037, ¶ 153; *State v. Marneros*, 8th Dist. Cuyahoga No. 109258, 2021-Ohio-2844, ¶ 39 ("fingerprint or DNA testing is not required to prove a defendant's possession of a firearm"). Physical evidence is not required to sustain a conviction; rather, "'the testimony of one witness, if believed by the jury, is enough to support a conviction.'" *Poindexter* at ¶ 22, quoting *State v. Strong*, 10th Dist. Franklin No. 09AP-874, 2011-Ohio-1024, ¶ 42.

**{¶32}** Finally, contrary to appellant's arguments, the state was not required to prove appellant had a motive in shooting and killing Moneyham. Motive is not an element of the crimes for which appellant was charged and the state did not have to offer proof of motive to sustain a conviction for murder, felonious assault, or having weapons while under disability. *State v. Ferguson*, 10th Dist. Franklin No. 20AP-437, 2022-Ohio-1648, ¶ 61; *State v. Gaines*, 12th Dist. Butler No. CA99-04-082, 2000 Ohio App. LEXIS 1776, *7-8 (Apr. 17, 2000).

**{¶33}** Accordingly, given the evidence presented at trial, the jury was entitled to find beyond a reasonable doubt that appellant committed the charged offenses of murder, felonious assault, and having weapons while under disability. Appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The jury did not lose its way and create such a manifest miscarriage of justice that

appellant's convictions must be reversed and a new trial ordered. Appellant's first and second assignment of error are overruled.

{¶34} Assignment of Error No. 3:

{¶35} THE APPELLANT WAS UNFAIRLY PREJUDICED BY THE ADMISSION OF SPECIFIC TESTIMONY RELATING TO HIS PRIOR CONVICTIONS.

{¶36} In his third assignment of error, appellant argues the trial court abused its discretion "by allowing the admission of evidence relating to the name and nature of [his] prior convictions [thereby] unfairly prejudicing him." Specifically, appellant takes issue with the court allowing the state to ask appellant if he had a prior conviction for attempted felonious assault when he had already stipulated to having a prior conviction for a felony offense of violence that precluded him from being in possession of a firearm. He also takes issue with the court allowing the state to question him about the events surrounding his 2016 altercation with Snowden, arguing that such information delved into his stipulated prior felony offense of violence.

{¶37} The admission or exclusion of evidence is a matter committed to the sound discretion of the trial court. *State v. White*, 12th Dist. Warren No. CA2018-09-107, 2019-Ohio-4312, ¶ 30. An appellate court will not reverse the trial court's decision to admit or exclude relevant evidence absent an abuse of discretion. *Id.* An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Gearhart*, 12th Dist. Warren No. CA2017-12-168, 2018-Ohio-4180, ¶ 13.

{¶38} Appellant argues the admission of evidence that he had a prior felony conviction for attempted felonious assault and had gone to prison for a 2016 altercation with Snowden violated Evid.R. 403 and the Ohio Supreme Court's ruling in *State v. Creech*, 150

Ohio St.3d 540, 2016-Ohio-8440.[1]  In *Creech*, the supreme court adopted the reasoning of the United States Supreme Court in *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 664 (1997) and held as follows:

> [p]ursuant to Evid.R. 403, in a case alleging a violation of R.C. 2923.13, when the name or nature of a prior conviction or indictment raises the risk of a jury verdict influenced by improper considerations, a trial court abuses its discretion when it refuses a defendant's offer to stipulate to the fact of the prior conviction or indictment and instead admits into evidence the full record of the prior judgment or indictment *when the sole purpose of the evidence is to prove the element of the defendant's prior conviction or indictment.*

(Emphasis added.)  *Id.* at ¶ 40.

**{¶39}** In *Creech*, the defendant, like appellant in the present case, was facing charges of having a weapon while under disability in violation of R.C. 2923.13.  *Id.* at ¶ 6. Creech offered to stipulate to any one of the three disabilities under which he had been charged, but the trial court refused to allow the stipulation.  *Id.* at ¶ 8-9.  At trial, during its opening statement and closing argument, the state proceeded to mention Creech's prior convictions for possession of crack cocaine and felonious assault with a deadly weapon and his indictment for aggravated drug trafficking near a school.  The state also presented testimony from a detective about Creech's prior convictions and indictment and introduced into evidence certified copies of the judgment entry of sentence for the convictions and of the indictment.  *Id.* at ¶ 10.  After being found guilty of all three counts of having a weapon while under disability, Creech appealed.  The Seventh District reversed the convictions, finding the trial court erred when it did not require the state to stipulate to Creech's indictment and prior convictions.  *Id.* at ¶ 14-15.  The Ohio Supreme Court agreed with the

---

1. Evid.R. 403(A) provides that, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

Seventh District, noting that the "fact that Creech's prior convictions and indictment could have been established through stipulation discounts the probative value of the evidence offered by the state." *Id.* at ¶ 38. The court concluded that "[t]he discounted probative value of the state's evidence was substantially outweighed by the danger of unfair prejudice in [the] case and thus the trial court abused its discretion in admitting the evidence."

{¶40} The present case differs significantly from the circumstances in *Creech*. First, unlike in *Creech*, the trial court accepted appellant's stipulations to having a prior conviction for a felony offense of violence and being under indictment for a felony drug abuse offense, both of which precluded him from being in possession of a firearm. The court read these stipulations to the jury. During opening statements, the state limited its reference to appellant's prior conviction and indictment to the stipulated facts, stating:

> And finally, you'll hear some testimony, you'll hear some evidence that Marquan Cook does have a prior conviction for a felony offense of violence that precludes him from being in possession of a firearm. And Marquan Cook, at the time of the offense, was under indictment for a felony drug abuse offense. And Judge McElfresh will explain to you want that means, but offense precluding him from being in possession of a firearm.

In presenting its case-in-chief, the state did not call a witness to testify about the nature of appellant's prior convictions or indictments or seek to admit certified copies of the prior indictment or judgment entry of sentence for the prior conviction. It was not until appellant took the stand and suggested that someone else was responsible for Moneyham's death – "[a] previous male [he] had an altercation with" – that the state inquired into the identity of this male and the specifics of appellant's prior conviction came to light.

{¶41} Appellant testified on direct that an "unfamiliar person" walked out of the 513 Lounge just prior to the shooting. Appellant suggested it was this "unfamiliar person" who was at fault for Moneyham's death, claiming that shortly after the "unfamiliar person"

shouted for appellant to approach him, 12 shots rang out and the unfamiliar person jumped into a Jeep stopped in the middle of Clark Street. On cross-examination, the state asked about this "unfamiliar person" who appellant believed was trying to harm him, and appellant stated it was "[a] previous male I had an altercation with." Appellant opened the door to questions about the "previous male" (Snowden) and the altercation he had with this individual. Furthermore, appellant volunteered that he "got sent to prison" for the altercation when the state asked whether appellant's mother, who helped him flee after the October 11, 2020 shooting, knew about the prior altercation. The purpose behind the state asking questions about appellant's prior felony conviction involving Snowden was not for the purpose of proving the element of appellant's prior conviction, but rather to challenge his defense that Snowden, or the "hit man" Snowden allegedly hired, was the gunman responsible for Moneyham's death. The state's line of questioning, therefore, did not run afoul of *Creech* and was permissible under the rules of evidence.

**{¶42}** Furthermore, as appellant took the stand to testify on behalf of his own defense, he was subject to impeachment with his prior convictions under Evid.R. 609. *See State v. Hendrix*, 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697, ¶ 21. Evid.R. 609(A)(2) provides that "[n]otwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year * * * and if the court determines the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Under the circumstances of this case, where appellant took the stand in his own defense and referenced the prior altercation for which he had been convicted, we find that the probative value of the evidence of appellant's prior conviction for attempted felonious assault outweighed the danger of unfair prejudice.

**{¶43}** This is especially true as the trial court provided the jury with the following limiting instruction:

> Evidence was received about the commission of crimes other than the offenses with which the Defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the Defendant in order to show that he acted in conformity with that character.
>
> If you find that the evidence of another crime is true and the Defendant committed it, you may consider that evidence only for the purpose of deciding Count V [having weapons while under disability, prior conviction of a felony offense of violence]. That evidence cannot be considered for any other purpose.
>
> * * *
>
> Evidence was received that at the time in question, the Defendant was under indictment for an offense other than the offenses with which the Defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the Defendant in order to show that he acted in conformity with that character.
>
> If you find that the evidence of another indictment is true, you may consider that evidence only for the purpose of deciding Count VI [having weapons while under disability, under indictment for a felony offense involving drugs of abuse]. That evidence cannot be considered for any other purpose.

We presume the jury followed those instructions and did not consider appellant's prior conviction for a felony offense of violence or his prior indictment for a felony drug offense as evidence of appellant's bad character or to show that assaulting and murdering Moneyham was in conformity with appellant's character. *See State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 23; *State v. Powih*, 12th Dist. Brown No. CA2016-11-023, 2017-Ohio-7208, ¶ 27-28.

**{¶44}** Accordingly, in view of the stipulations appellant entered, his admission to having served time in prison for a prior altercation, and the limiting instruction provided by

the judge, we find that the probative value of the evidence that appellant had been convicted of attempted felonious assault was not substantially outweighed by the risk of unfair prejudice. We further find that the trial court did not err in allowing the state to question appellant about the events surrounding his prior conviction, as appellant opened the door during his direct testimony when he referenced the "previous male [he] had an altercation with" who he believed was involved and responsible for Moneyham's death. Appellant's third assignment of error is, therefore, overruled.

**{¶45}** Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.